# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TERRY NEIL BOWLING,

     Petitioner,                 Case No. 4:16-CV-12132

                                 HONORABLE LINDA V. PARKER

v.                              UNITED STATES DISTRICT JUDGE

CONNIE HORTON,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Terry Neil Bowling, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for second-degree murder, MICH. COMP. LAWS § 750.317; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), resisting and obstructing a police officer, MICH. COMP. LAWS § 750.81d(1); and being a fourth felony habitual offender, MICH. COMP. LAWS § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

# I.    Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Livonia police officers received a tip that defendant, his wife, and his brother were involved in a series of unsolved home invasions. On January 17, 2011, after surveilling defendant's behavior for a time, police officers watched him and his brother drive to a house on Glenwood Drive in Walled Lake. Before they had arrived on Glenwood, defendant and his brother had agreed to a plan whereby they would enter the house and steal various items such as guns and cash, as had been their practice in their previous home invasions. After they reached the residence, defendant's brother stepped out of the car and approached the house. Defendant remained in the car and drove it a short distance away. Defendant then returned to the house with the car and parked. When entering the Glenwood house, defendant and his brother broke one window and damaged another; they also damaged a sliding door and a garage door. In addition, they damaged the wood floors and parts of the drywall during their time inside the house.

> After finding a safe, defendant left the house and went to get the vehicle. He intended to move it closer to the house so that it would be easier for him and his brother to load the safe they planned to steal. The police officers watching the front of the Glenwood house saw defendant enter the vehicle and decided the time had come to apprehend him.

> Officer Nehasil was positioned in the back of the Glenwood house so he could arrest anyone who ran out from that direction. Police officers approached defendant's vehicle on the street in front of the house and he tried to drive it around them. While he was attempting to flee, the police used one of their own cars to hit defendant's vehicle and force it into a snowbank. In an apparent last-ditch effort to avoid arrest, defendant got out of the vehicle and ran. Despite repeated commands to stop, he continued to flee until the police physically stopped him.

While the police in the front of the Glenwood house were occupied with trying to arrest defendant, a series of rapid gunshots rang out. Officers ran to the back of the house where they discovered Officer Nehasil's body lying on the ground. Defendant's brother was lying on top of the police officer. Both men were dead. Two guns were found at the scene, one belonging to Officer Nehasil and the other belonging to the owner of the Glenwood house. Defendant claimed that he did not see his brother with a gun before or during the home invasion. However, defendant stated that he and his brother had committed numerous home invasions in the past and it had been their practice to steal guns during these excursions. Defendant said that after stealing the guns he and his brother would sometimes sell them to drug dealers.

In exchange for dismissing a charge of first-degree murder, defendant pleaded *nolo contendere* to charges of first-degree home invasion, resisting and obstructing, and second-degree murder. Defendant was sentenced to 50 to 100 years for the first-degree home invasion conviction, 3 to 15 years for the resisting and obstructing conviction, and 100 to 150 years for the second-degree murder conviction.

*People v. Bowling*, 299 Mich. App. 552, 555–56, 830 N.W.2d 800, 802–03 (2013).

Petitioner's conviction and sentence were affirmed on appeal. *Id.*, *lv. den.* 494 Mich. 884, 834 N.W. 2d 478 (2013).

Petitioner filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500, *et. seq.*, which was denied. *People v. Bowling*, No. 11-236582-FC (Oakland Cnty. Cir. Ct. July 29, 2014.). The Michigan appellate court denied leave to appeal. *People v. Bowling,* No. 324613 (Mich. Ct. App. Jan. 9, 2015); *lv. den*., 498 Mich. 919, 871 N.W.2d 178 (Mich. 2015); *reconsideration den.* 499 Mich. 872, 874 N.W.2d 693 (2016).

In April 2016, Petitioner filed a motion to settle the record with the state trial court, which was denied on April 14, 2016. *People v. Bowling*, No. 11-236582-FC (Oakland Cnty. Cir. Ct. Apr. 14, 2016); *reconsideration den.*; *People v. Bowling*, No. 11-236582-FC (Oakland Cnty. Cir. Ct. June 14, 2016).

During the pendency of these two motions, Petitioner filed a habeas petition, which was held in abeyance while Petitioner attempted to exhaust additional state court remedies. *Bowling v. Woods,* No. CV 16-12132, 2016 WL 4486998 (E.D. Mich. Aug. 26, 2016).

Petitioner attempted to file a motion for evidentiary hearing and application for leave to withdraw his plea and a motion for new trial but the trial court, in letters to Petitioner dated July 18, 2016 and August 3, 2016, rejected his filings because they failed to fall within an exception to Mich. Ct. R. 6.502(G), which prohibits the filing of successive post-conviction motions. (*See* ECF Nos. 17-3, 17-4.)

In October 2016, Petitioner filed a complaint for superintending control with the Michigan Court of Appeals, which was denied. *In Re Bowling*, No. 335220 (Mich. Ct. App. Feb. 23, 2017); *reconsideration den.* 335220 (Mich. Ct. App. Apr. 11, 2017); *lv. den.* 501 Mich. 947, 904 N.W.2d 617 (2017).

On February 26, 2018, this Court granted Petitioner's motion to lift the stay and to amend his habeas petition.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. [Bowling's] no-contest plea is not knowing, intelligent, and voluntary, in violation of the Fourteenth Amendment, because it was entered with the misunderstanding (A) that the minimum terms would be within the guidelines and no more than 30 years, and (B) that the habitual-offender enhancement was valid.

II. Trial counsel was constitutionally ineffective for (A) advising [Bowling] that the minimum sentence would be no more than 30 years and that all sentences would be within the guidelines, and (B) failing to advise [Bowling] that the habitual offender notice was invalid.

III. [Bowling's] sentence is based on inaccurate information, namely, the sentencing court's finding that [Bowling] intended to kill and that 2 to 9 people were placed in danger of physical injury or death, resulting in a longer sentence, in violation of the due process clause of the Fourteenth Amendment.

IV. Appellate counsel was ineffective for failing to raise these claims on direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington,* 562 U.S. at 103. A habeas Petitioner should be denied relief as long as it is within the "realm of possibility" that fair-minded jurists

could find the state court decision to be reasonable.  *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III.  Discussion

### A.  The exhaustion/procedural default issue.

Respondent argues that several of Petitioner's claims are procedurally defaulted for several reasons.  Respondent first contends that portions of Petitioner's first and second claims are procedurally defaulted because Petitioner raised these claims for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his direct appeal.  Respondent argues that the remaining portion of Petitioner's first and second claims are procedurally defaulted because Petitioner never raised these claims in the state courts and no longer has an available state court remedy to do so, because M.C.R. 6.502(G) precludes the filing of a successive motion for relief from judgment in the absence of newly discovered evidence or a retroactive change in the law.

A habeas Petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the

interest of federal-state comity. *Prather v. Rees,* 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). A federal court should deny a non-federal or frivolous claim on the merits to save the state courts the futile review of meritless constitutional claims. *See Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).

Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the Petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas Petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner's two claims are meritless. Regardless of whether the claims have been properly exhausted and/or are procedurally defaulted, they fail on their own merit. [1]

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).

## B. Claims # 1 and # 2: The involuntary plea/ineffective assistance of trial counsel claims.

The Court consolidates Petitioner's first two claims together because they are interrelated. In his first claim, Petitioner alleges that his *nolo contendere* plea was involuntary because he was led to believe that the minimum sentence that he would receive would be no greater than thirty years, and because he was not informed that the habitual offender notice filed in this case was invalid. In his second claim, Petitioner alleges that his trial counsel was ineffective for advising him that he would receive no more than thirty years on the minimum sentences and for failing to advise Petitioner that the habitual offender notice was invalid and, hence, Petitioner could not plead *nolo contendere* to being a habitual offender.

Petitioner has no federal constitutional right to withdraw his *nolo contendere* plea. *See Hynes v. Birkett,* 526 F. App'x. 515, 521 (6th Cir. 2013). Unless a Petitioner's guilty or *nolo contendere* plea otherwise violated a clearly-established constitutional right, whether to allow the withdrawal of a habeas Petitioner's plea is discretionary with the state trial court. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005). Moreover, "[i]t is well-settled that post-sentencing 'buyer's remorse' is not a valid basis" to set aside an otherwise valid guilty or *nolo contendere* plea. *Meek v. Bergh*, 526 F. App'x. 530, 536 (6th Cir. 2013) (internal quotations omitted).

A guilty or *nolo contendere* plea that is entered in state court must be voluntarily and intelligently made. *See Shanks,* 387 F. Supp. 2d at 749; *Doyle v. Scutt,* 347 F. Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)). For a plea of guilty or *nolo contendere* to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his or her plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a Petitioner brings a federal habeas petition challenging his plea of guilty or no-contest, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Id.* Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

Petitioner initially claims that his plea was involuntary because he was led to believe that his minimum sentence would be no greater than thirty years and he could withdraw the plea if the judge exceeded that amount. Petitioner further

claims that trial counsel was ineffective for advising Petitioner that he would receive no more than thirty years on the minimum sentence.

An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas Petitioner to habeas relief. *Myers v. Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001). Moreover, any promises made by a judge in the course of a guilty plea colloquy operate as a promise made by the state in exchange for a defendant's waiver of rights and guilty or no-contest plea. *See Spencer v. Superintendent, Great Meadow Correctional Facility,* 219 F. 3d 162, 168 (2nd Cir. 2000). Nonetheless, a federal court on habeas review should not "lightly find misrepresentation in a plea agreement." *Myers,* 159 F. Supp. 2d at 627.

Absent extraordinary circumstances, or some other reason why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial judge scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1986). Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is otherwise than it unambiguously appears on a thorough record. *Id.* Plea agreements are to be strictly construed. *See United States v. Brummett,* 786 F. 2d 720, 723 (6th Cir. 1986). A term of a plea agreement "that is unambiguous on its face and agreed

to by the defendant in open court will be enforced." *McAdoo v. Elo,* 365 F. 3d 487, 497 (6th Cir. 2004). Moreover, "[T]he United States Constitution does not require judges to explain the meaning of ... unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record." *Id.*

The record in this case shows that Petitioner's *nolo contendere* plea was voluntary and knowing. Petitioner pled to one count of second-degree murder, one count of first-degree home invasion, and one count of resisting and obstructing a police officer as a fourth habitual offender. (Tr. 9/26/11, pp. 7-15). In exchange for his plea, the prosecution agreed to dismiss the first-degree murder count and to not request consecutive sentencing on the home invasion charge. Trial counsel indicated on the record that he had several discussions with Petitioner before the plea agreement was reached and about the sentencing guidelines, among other things. (*Id*. at 3-5).

The trial judge also stated that:

The court is making a representation that if the defendant were to plead guilty as agreed to on the Record by the People and the defendant and defense counsel that any sentence for the count two of the home invasion first degree would be concurrently served with the other sentence for the other charges, and that I would sentence the defendant within the guideline range.

(*Id*. at 6).[2]

Additionally, the trial judge stated:

[A] notice of intent to seek sentence enhancement for a fourth or subsequent offense, and based upon that you could receive up to life in prison in connection with the home invasion first degree and fifteen years in connection with the police officer, assault, resisting obstructing, and life in prison again for homicide murder, second degree …

[Y]ou would receive concurrent sentencing in connection with count two, which is home invasion first degree, and that I would otherwise sentence you within the guideline range, do you understand that?

(*Id*. at 8-9).

Trial counsel stated that he had "extensively spoken to [his] client regarding those [guidelines] and that they could be as high as starting at thirty years" and that "the court cannot be locked in to a specific number in the case, and my client understands that also." (*Id.*, p. 4). Petitioner acknowledged that counsel had discussed these issues with him. (*Id.*, pp. 4-5). Petitioner indicated to the judge that he and his attorney had spoken about the prosecution's burden of proof, any possible defenses, and that his counsel was ready and willing to try the case. (*Id.,* p. 5). Petitioner acknowledged that his counsel had not in any way pressured or coerced him to plead

---

[2] In *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty or no-contest and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. *See* M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x. 701, 703, n.1 (6th Cir. 2007).

no-contest or promised him that the court would be lenient.  Petitioner confirmed that the decision to plead was solely his.  (*Id.*, p. 6).

Petitioner informed the judge that he was 49 years old, could read, write, and understand English, and was satisfied with his counsel's advice.  (*Id.*, p. 7).  The judge repeated the plea agreement and Petitioner said he understood it.  As noted above, the judge informed Petitioner of the maximum penalties he faced—up to life in prison for the first-degree home invasion and second-degree murder offenses—and Petitioner acknowledged that he understood. (*Id.,* p. 8).  The judge asked Petitioner if he understood all the trial rights that he would waive by pleading *nolo contendere*, and Petitioner indicated that he did.  Petitioner also understood that if the court accepted his plea, he would give up any claim that the plea was a result of promises or threats not disclosed in court and that the plea was not his choice.  Petitioner denied that anyone made any threats or promises to induce his plea.  (*Id.*, pp. 9-12).

A "clear reading" of the plea agreement shows that there was no promise by the prosecutor or the trial judge that Petitioner would receive a minimum sentence of no greater than thirty years.  Petitioner has therefore failed to show that the original terms of the plea agreement were breached by the prosecutor or the trial judge.  *Myers,* 159 F. Supp. 2d at 628.  The only agreement with regards to sentencing was that the judge would sentence Petitioner within the sentencing guidelines.  To the

extent Petitioner claims that his sentence for home invasion was outside of the sentencing guidelines range for first-degree home invasion and in violation of *Cobbs*, the Judge noted at sentencing that the only guidelines scored were for second-degree murder, the highest offense. (Tr. 10/26/11, p. 52). Even if the Judge's promise to sentence Petitioner within the sentencing guidelines was ambiguously worded, in that it only referred to the second-degree murder guidelines, this would not entitle Petitioner to habeas relief. "No U.S. Supreme Court opinion has held that all conditions promised in a plea bargain must be communicated to a defendant unambiguously." *Myers,* 159 F. Supp. 2d at 627 (*citing Mask v. McGinnis*, 252 F.3d 85 (2nd Cir. 2001)).

Although defense counsel on the record gave estimates as to what he believed the minimum sentencing guidelines range would be, in light of the fact that the Judge explicitly advised Petitioner that he would sentence Petitioner within the sentencing guidelines range, without giving a specific number, Petitioner is unable to show that the trial court breached the sentencing agreement entered into pursuant to *Cobbs*, or that Petitioner had any reasonable belief that he would be sentenced to no more than thirty years in prison on the minimum sentence. *See Wright v. Lafler,* 247 F. App'x. 701, 705-08 (6th Cir. 2007).

To the extent Petitioner claims that his trial counsel misled him into believing that he would receive no more than thirty years in prison on the minimum sentence,

a state court's proper plea colloquy will cure any misunderstandings that a Petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear and thorough plea colloquy. *Id.*

Petitioner was not denied the effective assistance of counsel due to his counsel's alleged promise that he would receive no more than thirty years on the minimum sentence, where the plea and sentencing agreement contained no such promise and Petitioner stated at the plea hearing that he understood the terms of the sentencing agreement that he entered into with the trial court and the consequences of his plea. *See Sellers v. U.S.,* 316 F. Supp. 2d 516, 521 (E.D. Mich. 2004); *see also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 910-11 (E.D. Mich. 2006) (habeas petitioner's conclusory allegation that counsel estimated shorter term of imprisonment than that imposed was insufficient to overcome, for purposes of ineffective assistance claim, his on-the-record statements at plea hearing that counsel had not made any promises or estimates as to the applicable sentencing range if he pleaded no contest).

In light of the record made in this case, Petitioner is not entitled to habeas relief because he failed to show that he reasonably believed that he would receive a

minimum sentence of no more than thirty years in prison by pleading *nolo contendere*. *McAdoo,* 365 F. 3d at 497.

Finally, although Petitioner claims that he understood the plea agreement to guarantee him a sentence of no greater than thirty years on the minimum sentence, habeas relief should not be granted by crediting a petitioner's subjective version of his or her understanding of the plea bargain. *See Nichols v. Perini*, 818 F. 2d 554, 558-59 (6th Cir. 1987); *see also Doughty v. Grayson,* 397 F. Supp. 2d 867, 881-82 (E.D. Mich. 2005).

Petitioner further claims that his plea was involuntary because he was not informed by either the trial judge or his counsel that the habitual offender notice filed in this case was invalid. Petitioner claims that the habitual offender notice was invalid because the notice was filed on May 9, 2011 but Petitioner was not arraigned in circuit court until three days later on May 12, 2011. Petitioner argues that the habitual offender charges are invalid because M.C.L.A. 769.13 requires that the habitual offender notice can only be filed after the arraignment on the information.

Mich. Comp. Laws § 769.13 contemplates two different dates for measuring the timeliness of the filing of the habitual offender notice: (1) "21 days after the defendant's arraignment on the information charging the underlying offense" or (2) "if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." Numerous Michigan cases have held, however, that a

habitual offender notice is timely and valid if filed prior to the arraignment on the information. *See People v. Hornsby*, 251 Mich. App. 462, 469-70, 472, 650 N.W.2d 700, 705 (2002)("[T]he purpose of the fourteen-day rule enumerated in *Shelton* was 'to provide a defendant with notice, at an early stage of the proceedings, of the potential consequences should the defendant be convicted of the underlying offense.'"); *People v. Woods*, No. 322608, 2016 WL 232316, at * 6 (Mich. Ct. App. Jan. 19, 2016)("[T]he prosecution's failure to file proof of service with the trial court constitutes harmless error if the defendant received notice of the prosecution's intent to enhance his or her sentence and had the ability to respond."); *People v. Davis*, No. 318059, 2015 WL 501928, at * 6, n. 20 (Mich. Ct. App. Feb. 5, 2015)("While the statute requires that the notice be filed within 21 days after arraignment, that does not mean that a notice filed before arraignment is invalid."); *see also People v. Swift*, No. 318680, 2015 WL 728552, at * 2 (Mich. Ct. App. Feb. 19, 2015); *People v. Brown,* No. 255255, 2006 WL 1006558, at * 3 (Mich. Ct. App. Apr. 18, 2006).

In the present case, the habitual offender notice was valid and timely in that it was filed prior to the arraignment on the information; Petitioner did not need to be advised that the habitual offender notice was invalid to knowingly and voluntarily plead *nolo contendere*.

### C. Claim # 3: The inaccurate sentencing claim.

In his third claim, Petitioner contends that he was sentenced on the basis of inaccurate information, namely the improper scoring of Offense Variables 6 and 9 of the Michigan Sentencing Guidelines.

Petitioner's claim that the state trial court incorrectly scored or calculated the sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle him to habeas relief because such a departure does not violate any of Petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).

### D. Claim # 4: The ineffective assistance of appellate counsel claim.

Petitioner lastly contends that appellate counsel was ineffective for failing to raise his first and second claims on his direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As discussed *infra,* Petitioner's first and second claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of Petitioner's underlying claims can be shown to be meritorious, appellate counsel was not ineffective in the handling of Petitioner's direct appeal.

## IV. Conclusion

The petition for writ of habeas corpus is denied with prejudice.

The Court denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas Petitioner's constitutional claims on the merits, the Petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

The Court **DENIES WITH PREJUDICE** the Petition for Writ of Habeas Corpus and **DENIES** a Certificate of Appealability and leave to appeal *in forma pauperis.*

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 6, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 6, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager